IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EMERSON JARVIS LOPEZ
and EUGENE CLYDE ROANHORSE,

      Plaintiffs,

vs.                                      CIV. No. 96-0932 LH/JHG

UNITED STATES OF AMERICA,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(1) or, in the Alternative, Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(e) (Docket No.13 ), filed March 10, 1997.  This Court heard oral arguments on October 3, 1997, at which time this Court took this matter under advisement.  This Court, having considered the pleadings submitted by the parties, the arguments of counsel, and otherwise being fully advised, finds that Defendant's Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(1) (Docket No.13) is **granted**. The Court, having concluded that it does not have jurisdiction over this matter, will not consider Defendant's Alternative Motion for Summary Judgment pursuant to FED. R. CIV. P. 56(e) (Docket No. 13).

## BACKGROUND

On July 2, 1996, Plaintiffs Emerson Lopez and Eugene Roanhorse commenced this action for damages under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80. Plaintiffs allege a number of causes of action against the United States including: professional

1

negligence (Count I); negligent hiring, placement, retention, and supervision (Count II); negligent supervision of treatment (Count III); negligent failure to warn (Count IV); negligent breach of duty to control (Count V); professional negligence (Count VI); breach of fiduciary duty (Count VII); negligent and intentional infliction of emotional distress (Count VIII); professional negligence (Count IX); and negligent and intentional infliction of emotional distress (Count XI). Plaintiffs contend that David J. Bullis, Ph.D. ("Bullis") abused them during treatment and that the Indian Health Service ("IHS") contributed to the harm they suffered by negligently "hiring, retaining, supervising and controlling Bullis." (Pls.' Resp. to Def.'s Motion to Dismiss at p. 17). This harmful treatment allegedly occurred approximately nine years prior to the filing of Plaintiffs' complaint. The FTCA is governed by a two-year statute of limitations. Plaintiffs argue that their cause of action is not time-barred because they did not know and could not have known of IHS' legal duties to them and because "did not know, and could not have known, of their respective injuries and their cause until after December of 1995, and then only by engaging in competent psychotherapy . . ." (Pls.' First Am. Compl. ¶ 26). Plaintiffs maintain that they have post-traumatic stress disorder as a result of the treatment they received in the mid-1980s and have been in blameless ignorance of their injury and its cause until after December 1995.

     Defendant United States contends that this Court lacks jurisdiction because the statute of limitations has run on Plaintiffs' causes of action. Defendant requests that this Court dismiss Plaintiffs' causes of action and Complaint pursuant to Fed. R. Civ. P. 12(b)(1) or, in the alternative, grant summary judgment to Defendant United States of America as a matter of law, pursuant to Fed. R. Civ. P. 56(e).

## DISCUSSION

Generally, motions to dismiss for failure to state a claim are viewed with disfavor and are therefore rarely granted. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (1990). In ruling on a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff and take the allegations asserted in the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Therefore, "the issue is not whether a plaintiff will ultimately prevail but whether a claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236. The court, after construing the pleadings liberally, should not dismiss the case if there is any possibility of relief. *Gas-a-Car, Inc. v. American Petrofina, Inc.*, 484 F.2d 1102, 1107 (10th Cir. 1973).

The United States, as a sovereign, is immune from suit unless it explicitly waives its immunity. *United States v. Sherwood*, 312 U.S. 584, 590-91 (1941). By enacting the FTCA, Congress has waived the United States' sovereign immunity under very limited circumstances. 28 U.S.C. § 1346; *United States v. Orleans*, 425 U.S. 807(1976). Congress has defined the exact terms and conditions upon which the government may be sued. The terms of the United States' consent define the parameters of federal court jurisdiction to entertain suits brought against the United States. *United States v. Orleans*, 425 U.S. at 814; *Honda v. Clark*, 386 U.S. 484, 501 (1967); *Dalehite v. United States,* 346 U.S. 15, 30-1 (1953). "A tort claim against the United States shall forever be barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. 2401(b).

The timely filing of an administrative claim is a jurisdictional requirement of the FTCA. It is well settled law that an action brought against the United States under the FTCA must be dismissed if a plaintiff fails to file a timely administrative claim with the appropriate federal agency. *Casias v. United States,* 532 F.2d 1339 (10th Cir. 1976); *Caton v. United States*, 495 F.2d 635 (9th Cir. 1974). This Court should not take it upon itself to extend the waiver of immunity beyond what Congress intended. *United States v. Kubrick*, 444 U.S. 111, 118 (1979). Statutes of limitations governing the filing of claims are to be strictly construed. *Dunn v. United States*, 775 F.2d 99 (3rd Cir. 1985); *Three-M Enters, Inc. v. United States,* 548 F.2d 293, 295 (10th Cir. 1977). Because section 2401(b) is both a condition of the United States' waiver of immunity and a federal jurisdictional provision, it must be interpreted solely by reference to federal law. *Sexton v. United States*, 832 F.2d 629, 633, n.4 (D.C. Cir. 1987) *quoting Zeleznik v. United States*, 770 F.2d 20, 21 (3rd Cir. 1985), *cert. denied,* 475 U.S. 1108 (1986); *Bailey v. United States*, 642 F.2d 344, 347 n.1 (9th Cir. 1981); *Stoleson v. United States,* 629 F.2d 1265, 1268 (7th Cir. 1980), *cert. denied,* 454 U.S. 893; *Wollman v. Gross*, 637 F.2d 544, 551 (8th Cir. 1980), *cert. denied,* 454 U.S. 893 (1981); *Exnicious v. United States,* 563 F.2d 418 (10th Cir. 1977).

In determining whether an action has been filed within the two-year statute of limitations, the threshold inquiry is when the cause of action accrued. The Supreme Court of the United States has held that a claim "accrues" for purposes of the two-year statute of limitations, when the plaintiff knows both of the existence and the cause of the injury. *United States v. Kubrick* at 122-25. Accrual need not wait "awareness by the plaintiff that his injury was negligently inflicted." *Id.* at 123. In *Kubrick*, plaintiff was injured by neomycin irrigation. Although plaintiff was aware at an

4

early stage that the neomycin had caused his injury, it was not until several years later that he knew that he had been treated negligently. Plaintiff contended that the statute of limitations did not begin to run until he was aware of the negligent quality of the treatment. The Court rejected this contention, holding that notice of the injury and its cause began the running of the statute. The Court explained as follows:

> That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask.

444 U.S. at 122.

Plaintiffs make three arguments as to why the statute of limitations did not begin to accrue until after December of 1995, when Plaintiffs were diagnosed as having post-traumatic stress disorder: first, Plaintiffs did not know, and could not have known of their injury; second, Plaintiffs did not know and could not have known the cause of their injury; and third, the statute of limitations was tolled because IHS' and Bullis' negligence caused the very conditions which prevented Emerson and Eugene from discovering the existence and cause of their injuries.[1]

For a FTCA claim to accrue, the claimant must know of the existence of his injury. *United States v. Kubrick,* 444 U.S. at 111. Plaintiffs argue that because they did not know, and could not have known, the impact Bullis' treatment had on their psychological well-being, the

---

[1] Defendant United States of America goes beyond allegations contained in the complaint and challenges the facts upon which jurisdiction depends. As stated in *Holt v. United States*, "a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. United States,* 46 F.3d 1000 (10th Cir. 1995). In such instances, a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion.

statute of limitations did not begin running until after December of 1995 when they were informed of their psychological injuries by a psychotherapist. (Pls.' Resp. to Def.'s Mot. to Dismiss at p. 7) Plaintiffs allege that their psychological injuries stem from the facts that Bullis attempted to engage Eugene in sexual contact, provided liquor to them, and copiously used liquor and marijuana with them during the mid-1980s. (Pls.' First Am. Compl. ¶ 24)

The relevant inquiry is not whether Plaintiffs knew or should have known of the ultimate psychological harm they would suffer as a result of Bullis' allegedly tortious conduct, but whether Plaintiffs were aware, or should have been aware, that they were injured at the time Bullis committed the acts at issue. In *Robbins v. United States*, the Court held that a claimant is aware of the injury once he or she has been appraised of the general nature of the injury. *Robbins* also held that lack of knowledge of the injury's permanence, extent, and ramifications does not toll the statute. *Robbins v. United States*, 624 F.2d 971 (10th Cir. 1980). *See Raddatz v. United States*, 750 F.2d 791, 796 (9th Cir. 1984). The fact that ultimate damages may be unknown or unpredictable does not delay accrual, once a cognizable injury has occurred. *Robbins*, 624 F.2d at 973 (citing *Exnicious*, 563 F.2d at 421). In this case, Plaintiffs knew or should have known that Bullis injured them when he sexually propositioned Eugene and provided and used liquor and marijuana with them. The psychological injury is but another consequence of that conduct. The inquiry, therefore, is whether Plaintiffs understood at the time that a sexual proposition and use of alcohol and illegal drugs were harmful.

Plaintiffs argue that "a Native American adolescent, who had been taught to respect and obey and not to question Anglo authority figures, who grew up in a dysfunctional family where his parents were substance abusers, and who was told that it was appropriate to use alcohol and

marijuana by an Anglo therapist who counseled him for substance abuse problems . . . [should not] . . . have known that use of drugs and alcohol was wrong." (Pls.' Resp. to Def.'s Mot. to Dismiss at p. 9).[2] This Court disagrees. Plaintiffs had appeared before the Tribal Court concerning their substance abuse problems and had, in fact, been assigned to Bullis for treatment of these problems. As Defendant argues, Plaintiffs were aware that drinking under the age of 18 was illegal and using marijuana was illegal at any age. Plaintiffs knew, or should have known, that if Dr. Bullis participated in such activities with them, Dr. Bullis was breaking the law, if not committing malpractice. (Def. Reply at p. 3) In an earlier deposition, when asked what kind of trouble he had been getting into that required the assignment of Bullis to him, Plaintiff Lopez responded, "Drinking, smoking marijuana, sniffing spray paint, gasoline, taking off from school, breaking into buildings." (Def.'s Reply to Pl.s' Resp., Ex. D at 7-8) In addition, Plaintiffs allege that they were not aware of the harm until "after December of 1995, and then only by engaging in competent psychotherapy." (Pls.' First Am. Compl. ¶ 26). However, Plaintiff Lopez stated in a deposition on December 14, 1995, that he wondered why Bullis wasn't trying to help him. (Def.'s Reply to Pl.s' Resp., Ex. D at 42). Knowledge that the use of alcohol and illegal drugs was wrong and that Bullis wasn't trying to help them, was sufficient to put the Plaintiffs on notice that the treatment had, at the very least, been ineffective and that they could have inquired in the medical or legal community or of some authority figures in their lives as to why they had not improved under Bullis' treatment.

---

[2] It is well established that a claimant's minority does not toll the running of the statute of limitations under the Federal Tort Claims Act. *Robbins v. United States*, 624 F.2d at 972.

There was nothing preventing either Plaintiff from availing himself of medical and legal advice at the time of, or within a reasonable time after, the incidents. Indeed, both Plaintiffs were under an affirmative duty to seek medical and legal advice regarding their injuries once they became aware that they had suffered some harm. *See Bradley v. United States*, 951 F.2d 268, 270 (10th Cir. 1991). "To allow Plaintiff to postpone accrual until he is passively informed by an outside source that his injury was negligently inflicted would serve to undermine the purpose of the limitations statute, that claims against the government require diligent presentation." *Id.* at 271.

Plaintiffs argue that IHS' negligence in hiring, retaining, supervising and controlling Bullis is another cause of their injuries. Plaintiffs argue that the statute of limitations was tolled because they did not know of IHS' negligence in these areas. None of this is relevant. In *United States v. Kubrick,* the United States Supreme Court expressly disapproved circuit decisions holding that accrual does not occur until a claimant has knowledge that the acts causing injury might constitute medical malpractice. *United States v. Kubrick* 444 U.S. at 121. The issue of plaintiffs' knowledge of a legal duty owed them or a breach of that duty is, therefore, irrelevant. *See Robbins v. United States,* 624 F.2d 971 (10th Cir. 1980).

Next, the Plaintiffs argue that the statute of limitations was tolled because "IHS' and Bullis' negligence caused the very conditions which prevented Emerson and Eugene from discovering the existence and cause of their injuries." (Pls.' Resp. to Def.'s Mot. to Dismiss at p. 3). In support of this position, Plaintiffs rely heavily on *Zeidler v. United States*, 601 F.2d 527 (10th Cir. 1979). In *Zeidler,* the government performed two lobotomy operations on the plaintiff, allegedly in an effort to control his conduct, and then, in plaintiff's subsequent FTCA suit, claimed

that plaintiff should have known of the alleged malpractice. The Tenth Circuit acknowledged that while it had previously held that a plaintiff's mental condition does not toll the statute of limitations, "brain damage or destruction is not to be classified in the same way as ordinary mental disease or insanity for purposes of barring such an action." *Id*. at 531. The Tenth Circuit held that, under such extraordinary circumstances, where the physician had caused brain damage or destruction, it would be unjust to start the running of the statute of limitations. The *Zeidler* case, which involves brain destruction and severe mental incapacitation does not apply to the facts of the present case. Plaintiffs do not cite any authority equating psychological harm to brain damage or destruction.

As support for their position that the statute of limitations should be tolled because Bullis and IHS caused their injuries, Plaintiffs also cite *Ebrahimi v. E.F. Hutton & Co., Inc.,* 852 F.2d 516 (10th Cir. 1988). In the *Ebrahimi* case, plaintiff contended that the statute of limitations on his claims under the anti-fraud provision of the Commodity Exchange Act had not run, but rather was tolled due to his mental illness. Ebrahimi asserted that the activities of the Ayatollah Khomeini in Iran threatened the safety of his relatives living there, which caused him to become mentally ill. The court held that "mental illness due to no fault of the defendant could not have delayed running of the statute of limitations." *Id.* at 521. Plaintiffs interpret this holding to mean that where defendant caused plaintiff's mental disability, the statute of limitations does not run. (Pls.' Resp. to Def.'s Mot. to Dismiss at p. 15). Not only is this case not a FTCA case, Plaintiffs misread the holding. In cases of mental disability, not amounting to brain damage or destruction, the statute of limitations is not tolled. *Casias v. United States*, 532 F.2d 1339 (10th Cir. 1976).

Plaintiffs argue that they were unable to understand the cause of their injuries because of

9

the "transference phenomenon which is inherent in all psychotherapeutic relationships" and IHS' failure to intervene. (Pls.' First Am. Compl. ¶ 26). Plaintiffs argue that the transference phenomenon prevented them from understanding the cause of their harm. Transference is a term used by psychiatrists and psychologists to denote a patient's emotional reaction to a therapist and is "generally applied to the projection of feelings, thoughts and wishes onto the analyst, who has come to represent some person from the patient's past." *Stedman's Medical Dictionary,* 1473 (5th Lawyers' Ed. 1982), as quoted in *Simmons v. United States*, 805 F.2d 1363 (9th Cir. 1986). According to *Simmons v. United States,* the "transference relationship grows so that the client comes to experience the therapist as a powerful benevolent parent figure." *Id.,* 805 F.2d 1363, 1365 (9th Cir. 1986). [3]

In this case, Plaintiff Lopez testified that prior to his diagnosis of post-traumatic stress disorder, he and his friends thought Bullis was crazy and that they would call him "Crazy White Man," because if Bullis' patients told him to do something, he would do it. (Def.'s Reply to Pl.s' Resp., Ex. D at 70-71). In addition, Plaintiff Lopez questioned Bullis' actions with, "What's this White man doing with us Indians? He's supposed to be helping us out, and he was going around drinking with us." (Def. Mem. Ex. A at 13-14 as cited in Def.'s Reply to Pl.s' Resp. at p. 6). This is not the picture of a naïve, unsuspecting patient who sees his therapist as a powerful, benevolent parent figure and believes that the therapist is always acting in his best interest. Thus, this Court concludes that the transference phenomenon did not prevent Plaintiffs from understanding the

---

[3]In *Benavidez v. United States,* No. 95-0823 (D.NM filed July 28, 1997), this Court questioned *Simmons*, and its reasoning. This Court does not share the Ninth Circuit's view that the transference phenomenon necessarily sets the psychotherapist apart from other professionals who also engage in relationships based on trust, that involve substantial differences in power, confidence, and education between the participants. Nonetheless, the Court does recognize the impact such a powerful relationship can have on the weaker participant, and the damage which can result, should that trust be abused.

cause of their harm.

In conclusion, Plaintiffs, by their pleadings, were aware or should have been aware of their injuries and the causes of said injuries when Bullis' tortious acts occurred in the 1980s. The transference phenomenon, by their own admissions, did not prevent Plaintiffs from ascertaining harm and thereby the cause of their harm. The fact that Plaintiffs were unaware of the ramifications of their allegedly negligent treatment, does not absolve them of the responsibility to seek medical or legal advice before the expiration of the statute of limitations. Finally, the Plaintiffs' ignorance of IHS' legal duty to them, if any existed, does not toll the statute of limitations.

Since the statute of limitations has run on Plaintiffs' case, this Court lacks subject matter jurisdiction to hear Plaintiffs' claims. Compliance with two-year statute of limitations of Federal Tort Claims Act is required to give federal court subject matter jurisdiction. *Gualtier v. United States,* 837 F.Supp. 360, 362 (10th Cir. 1993). *See Crawford v. United States,* 796 F.2d 924, 927 (7th Cir. 1986).

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(1) (Docket No.13) is **granted** for lack of jurisdiction. The Court, having concluded that it does not have jurisdiction over this matter, will not consider Defendant's Alternative Motion for Summary Judgment pursuant to FED. R. CIV. P. 56(b) (Docket No. 13), and hereby dismisses the case against the United States, in its entirety, with prejudice.

**IT IS FURTHER ORDERED** that Defendant's Alternative Motion for Summary Judgment pursuant to FED. R. CIV. P. 56(e) (Docket No. 13), filed March 10, 1997, is **denied as moot.**

11

**IT IS FURTHER ORDERED** that costs are awarded to the Defendant.

_____
**UNITED STATES DISTRICT JUDGE**